UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JOHNNY RAY LITTLE, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:20-CV-00150-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| ANDREW SAUL, Acting Commissioner ) | **ORDER** |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Johnny Ray Little seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Little brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering his claim. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Little's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Johnny Ray Little initially filed an application for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income benefits on October 13, 2016, alleging disability beginning September 9, 2016. [Transcript (hereinafter, "Tr.") 174–82.] Both claims were denied on December 16, 2016, and then again on February 14, 2017. [Tr. 101–04, 107–09.] Mr. Little filed a request for a hearing on February 21, 2017, and on January 24, 2019, Administrative Law Judge (ALJ) Davida H. Isaacs held a video conference. [Tr. 31–54.] On

April 22, 2019, ALJ Isaacs rendered a decision concluding that Mr. Little was not disabled. [Tr. 13–25.] The Appeals Council denied Mr. Little's request for review, making the ALJ's decision final. [Tr. 1–6.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work experience) prevent him from

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Mr. Little had not engaged in substantial gainful activity since the alleged onset date, September 9, 2016. [Tr. 18.] At step two, the ALJ found Mr. Little to suffer from the following severe impairments: degenerative disc/joint disease; obesity; hypertension; and missing distal phalanges on right second digit. *Id*. At step three, the ALJ determined that Mr. Little's combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404 or Part 416. *Id* at 19. Before moving on to step four, the ALJ considered the record and determined that Mr. Little possessed the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find Mr. Little has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no more than occasional crouching and climbing of ladders and scaffolds; no more than frequent fingering with the right dominant hand; no more than occasional exposure to whole body vibration; and would be off task maximum 5 percent of the workday.

*Id.* After explaining the RFC, the ALJ found at step four that Mr. Little is not capable of performing past relevant work as a yard spotter or tractor-trailer driver. [Tr. 23.] At step five, the ALJ found that "considering Mr. Little's age, education, work experience, and residual

3

functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform." *Id.* Accordingly, the ALJ determined at step five that Mr. Little was not disabled since September 9, 2016. [Tr. 24.] Mr. Little filed this action for review on April 14, 2020. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings…'shall be conclusive' if supported by 'substantial evidence.'") (quoting 42 U.S.C. § 405(g)); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's

4


decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**II**

Mr. Little presents two arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues that (1) the ALJ improperly accepted vocational expert testimony that was inconsistent with the agency's own rules and regulations; and (2) the ALJ then failed to adequately resolve conflicts that arose at the hearing during the vocational expert's testimony. [R. 14-1 at 1.] For the reasons set forth below, Mr. Little's arguments do not warrant reversal of the ALJ's determination.

**A**

First, Mr. Little argues the ALJ improperly accepted vocational expert testimony that was inconsistent with the agency's own rules and regulations. [R. 14-1 at 2.] In making this argument, Mr. Little points to Social Security Rulings 85-14 and 85-15 and the Social Security Program Operations Manual System DI 25001.001, which he argues all state that medium work requires frequent stooping. *Id.* The ALJ presented a hypothetical residual functional capacity limiting Mr. Little to performing medium work, except that Mr. Little could only engage in occasional crouching. *Id.* at 3. Mr. Little argues that because medium work requires frequent crouching, and Mr. Little could only engage in occasional crouching according to his RFC, "[t]here is an obvious inconsistency between how the agency defines medium work and the vocational expert's testimony." *Id.* This inconsistency between Mr. Little's ability to occasionally crouch and the agency requirement that medium work requires frequent crouching

means that the ALJ "failed to comply with the agency's own policies and definitions" and "[r]emand is warranted." *Id.* at 5.

In response, the Commissioner argues that Mr. Little incorrectly argues that *all* medium work requires frequent crouching. [R. 16 at 5.] The Commissioner points to the same sources relied on by Mr. Little to argue that although most medium work requires frequent crouching, not all medium work carries that particular requirement. *Id.* For example, SSR 83-14 states that bending must frequently be done "in *most* medium, heavy, and very heavy jobs." 1983 WL 31254, at *2 (emphasis added). Another agency policy statement explains that "[m]edium work *usually*…[r]equires frequent stooping and crouching." POMS DI 25001.001(A)(46) (emphasis added).

The Commissioner states that the ALJ followed proper procedure in determining that a particular combination of limitations existed that necessitated consultation with a vocational expert to determine what work Mr. Little could perform. *Id.* at 7. Here, the vocational expert was able to identify three medium work jobs that require no crouching that exist in significant numbers within the national economy: (1) tester (with 17,900 jobs in the national economy); (2) bench work (with 90,000 jobs in the national economy[2]); and (3) machine tender (with 380,000 jobs in the national economy). [Tr. 24.]

Here, the ALJ reasonably relied on the vocational expert's testimony, which was consistent with the agency's rules and regulations. The ALJ carefully considered the entire record, which includes objective medical evidence and all other relevant evidence, in determining Mr. Little's residual functional capacity. [Tr. 19.] Mr. Little did not contest the

---

[2] The vocational expert actually testified that bench work included 900,000 jobs in the national economy, not 90,000 as the ALJ wrote in her decision. [*Compare* Tr. 24 *with* Tr. 51.] This reveals that even more jobs exist within the national economy that Mr. Little can perform given his residual functional capacity.

6

ALJ's residual functional capacity.  The ALJ recognized that Mr. Little's residual functional capacity (e.g., occasional crouching instead of frequent crouching) "erode[d] the unskilled medium occupational base" and therefore the ALJ was careful to ask the vocational expert specifically about jobs existing in the national economy that were consistent with Mr. Little's age, education, work experience, and residual functional capacity.  [Tr. 24.]  As discussed above, the vocational expert testified that given all of Mr. Little's individual characteristics, he could perform the medium work jobs of tester, bench work, and machine tender, all of which existed in significant numbers in the national economy.  *Id.*

      Mr. Little is not correct in his belief that medium work requires frequent crouching.  First, Mr. Little provided no cases within the Sixth Circuit or elsewhere to support his proposition that all medium work requires frequent crouching.  Second, the Sixth Circuit has consistently affirmed decisions in which ALJ's carved out particular limitations in crafting a plaintiff's residual functional capacity and determining what level of work a plaintiff could perform.  *See, e.g.*, *Dawson v. Comm'r of Soc. Sec.*, 468 F. App'x 510, 514 (6th Cir. 2012) (affirming ALJ's decision which relied on vocational expert testimony regarding individual "who was limited to exertional requirements of medium work" and "could only occasionally balance, stoop, kneel, and crouch"); *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 220 (6th Cir. 2010) (affirming ALJ's determination that although plaintiff could not "generally perform medium work" he could perform "limited" medium work); *Cisco v. Sec. of Health and Human Servs.*, 1991 WL 27416, at *1 (6th Cir. Mar. 5, 1991) (affirming ALJ finding that plaintiff could perform "medium work with limitations on climbing, stooping, kneeling, crouching, crawling, and overhead lifting"); *Goldsby v. Sec., Dept. of Health and Human Servs.*, 1986 WL 16712, at *1 (6th Cir. Mar. 6, 1986) (affirming ALJ decision finding that although plaintiff could only

7

occasionally climb, balance, stoop, kneel, crouch, and crawl, he could still perform a "wide range of medium work").

The ALJ was reasonable in crafting Mr. Little's residual functional capacity and was careful to ask the vocational expert about medium jobs existing in the national economy that accounted for Mr. Little's background and physical limitations. Therefore, the Court finds that the ALJ properly accepted the vocational expert testimony, and the testimony was not inconsistent with the agency's own rules and regulations.

**B**

Mr. Little's second argument is that the ALJ failed to adequately resolve conflicts that were presented at the hearing. [R. 14-1 at 1.] Mr. Little argues that to use a vocational expert's testimony, an ALJ "must inquire on the record whether there are any conflicts between occupational evidence the VE provided and information contained in the *Dictionary of Occupational Titles* (DOT)." *Id.* at 5. Specifically, Mr. Little argues that (1) "the vocational expert neglected to provide an explanation to support her findings, that you can occasionally crouch and still perform medium work" and (2) "[t]he ALJ did ask the vocational expert, prematurely and out of sequence, to inform about inconsistencies." *Id.* at 6–7.

The Commissioner, in response, argues that there is "no inconsistency between the expert's testimony and the DOT job descriptions" and thus "there were no conflicts to resolve." [R. 16 at 8–9.] The Court agrees. The ALJ asked the vocational expert to signify that her testimony would be consistent with the DOT, and if it wasn't, to provide a basis for her testimony, and the vocational expert provided an affirmative answer. *Cf. Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369 (6th Cir. 2006) (finding that ALJ satisfies her duty to inquire if she asks the vocational expert whether her testimony is consistent with the DOT and receives

affirmative response, so long as there are no objections to the testimony and the ALJ reasonably relies on the testimony).

The vocational expert considered the work prospects of a hypothetical individual who could perform medium work with no more than occasional crouching and fit Mr. Little's other relevant characteristics. [Tr. 50.] The vocational expert then provided testimony that was consistent with the DOT—all three jobs the expert identified fit comfortably within the medium work category and accommodated Mr. Little's limitations. [Tr. 24.] To the extent that Mr. Little's attorney inquired as to whether medium work required frequent standing, the vocational expert correctly stated that "[n]ot all medium does require frequent stooping and crouching, but many of the categories do require that." [Tr. 49.] ALJs frequently craft RFCs within a work category that carve out particular limitations, and that is what the ALJ did here. The vocational expert sufficiently explained that not all medium work requires frequent stooping and crouching, and the ALJ properly ask the vocational expert to support any inconsistencies with the DOT. Thus, there were no conflicts to resolve, and Mr. Little's argument that the ALJ failed to resolve arguments that arose at the hearing is without merit.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Johnny Ray Little's Motion for Summary Judgment [**R. 14**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**R. 16**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 15th day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge